| | | |
|---|---|---|
| **RANDY DALE HOVIS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:10CV1815SNLJ/MLM** |
| | ) | |
| **JILL MCGUIRE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Randy Dale Hovis ("Petitioner") filed pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 4. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 2.

## I.
## PROCEDURAL HISTORY

Petitioner was charged by Information with eleven counts of the class D felony of Issuing Account Closed Checks. Resp. Ex. A at 24-27. On January 9, 2007, Petitioner plead guilty to two of the counts with the remaining counts dismissed. Resp. Ex. A at 9-10, 32-35. On April 6, 2007, the court imposed two consecutive four-year sentences and placed Petitioner on probation. Resp. Ex. A at 56-66. On January 11, 2008, Petitioner's probation was revoked, and he was delivered to the DOC on January 16, 2008. Resp. Ex. A at 72, 87.

On March 6, 2008, Petitioner filed a pro se post-conviction relief motion. Resp. Ex. A at 72-82. Counsel was appointed and filed an amended motion. Resp. Ex. A at 86-99. By decision, dated

September 11, 2008, the motion court denied Petitioner's amended motion for post-conviction relief. Resp. Ex. A at 100-106.

On May 1, 2009, Petitioner appealed the decision of the motion court to the Missouri appellate court. Resp. Ex. B. By decision dated September 8, 2009, the appellate court affirmed the decision of the motion court. Resp. Ex. D. The mandate issued on October 1, 2009. Resp. Ex. E. Petitioner filed his § 2254 Petition on September 21, 2010. Doc. 1. In his § 2254 Petition, Petitioner raises the following issues:

> (1)     Petitioner received ineffective assistance of counsel because counsel allowed Petitioner to plead guilty while suffering from the effects of medication;
>
> (2)     Petitioner received ineffective assistance of counsel because counsel failed to accurately explain to him the State's recommendation regarding sentencing; and
>
> (3)     Petitioner received ineffective assistance of counsel because counsel failed to fully investigate his case.

## II.
## DEFAULT, EXHAUSTION, AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal

constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412. Petitioner raised the issues which he raises before this court in the appeal of his post-conviction relief motion. As such, he has not procedurally defaulted Grounds 1-3.

§ 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. The Court, in Duncan, recognized the need to reconcile the tolling provision of § 2244(d)(2) with the exhaustion requirement of § 2254(b). The Court held that:

> Section 2244(d)(2) promotes the exhaustion of state remedies by protecting a state prisoner's ability later to apply for federal habeas relief while state remedies are being pursued. At the same time, the provision limits the harm to the interest in finality by according tolling effect only to "properly filed application[s] for State post-conviction or other collateral review."

Duncan, 533 U.S. at 179-80.

The limitation period of § 2244(d)(1) runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

For a Missouri defendant, a "judgment becomes final for purposes of appeal when the judgment and sentence are entered." State v. Holtze, 250 S.W.3d 745, 746 (Mo. Ct. App. 2008) (citing State v. Welch, 865 S.W.2d 434, 435 (Mo. Ct. App. 1993). An appeal must be filed within ten days thereafter. State ex rel. Wagner v. Ruddy, 582 S.W.2d 692, 693 (Mo. banc 1979). The same time limit applies to those cases where an appeal is permitted from a guilty plea. State v. Werbin, 597 S.W.2d 663, 664 (Mo. App.1980)." State v. Harris, 863 S.W.2d 699, 700 (Mo. Ct. App. 1993). The Eighth Circuit explained, in Williams, 299 F.3d at 983, as follows:

> We stated in [Peterson v. Gammon, 200 F.3d 1202 (8th Cir.2000)] that a post-conviction application remains "pending" for the entire period during which a notice of appeal "would be timely, assuming such a notice was in fact filed." See id. at 1205. ... Peterson did not say that the statute of limitations was tolled only if the petitioner filed a timely appeal; it said that it was tolled if he or she did so. Although we have not answered the question directly, those circuit courts that have addressed it have concluded that the application is "pending" (and thus the limitations period is tolled) during the appeal period, even if the petitioner does not appeal. See Gibson v. Klinger, 232 F.3d 799, 803-04 & n. 1 (10th Cir.2000); Swartz v. Meyers, 204 F.3d 417, 420-24 (3d Cir. 2000).

When a Missouri prisoner files for transfer to the Missouri Supreme Court "there is no question he [is] entitled to the expiration of the time allotted for filing a petition for a writ of certiorari to the United States Supreme Court." Pierson v. Dormire, 484 F.3d 486,494 (8th Cir. 2007).

Section 2244(d)(2) states that "[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." Thus, the statute provides that any additional period during which the statute is tolled is added to the one-year period. Peterson v. Gammon, 200 F.3d 1202, 1204 (8th Cir. 2000). While a properly filed state petition for post-conviction relief is pending the 1-year period of § 2244(d)(2) is tolled. King v. Hobbs, 2012 WL 246516, at *2 (8th Cir. Jan. 27, 2012); Williams v. Bruton, 299 F.3d 981, 982 (8th Cir. 2002). The pivotal question arises, therefore, as to when an application for state post-conviction relief is pending.

Id. "The term 'pending' includes the interval between the trial court's denial of postconviction relief and the timely filing of an appeal from the denial." Beery v. Ault, 312 F.3d 948, 950 (8th Cir. 2002) (citing Peterson, 200 F.3d at 1203). It is not "pending," however, "between the date direct review concludes and the date an application for state postconviction relief is filed." Id. (citing Painter v. Iowa, 247 F.3d 1255, 1256 (8th Cir. 2001)). The United States Supreme Court has clarified that "[t]he application for state postconviction review is [] not 'pending' after the state court's postconviction review is complete, and § 2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for certiorari." Lawrence v. Florida, 127 S. Ct. 1079, 1083 (2007).

Respondent contends that Petitioner's § 2254 Petition is untimely. Missouri Rule 24.035 requires that, for a person who is convicted after a guilty plea, a post-conviction relief motion must be filed 180 days after the person is delivered to the custody of the DOC. Petitioner, who plead guilty, was ultimately delivered to the custody of the DOC on January 16, 2008. He filed his post-conviction relief motion fifty days later, on March 6, 2008. Thus, the statute of limitations ran from January 16, 2008, to March 6, 2008. The statute was then tolled from March 6, 2008, until no later than October 1, 2009, the date the appellate court issued the mandate.[1] At that point, Petitioner had 315 days to file his § 2254 Petition in federal court. Petitioner, however, did not file his § 2254 Petition until September 21, 2010, which date was in excess of 315 days. As such, the court finds that Petitioner's § 2254 Petition was untimely filed. In the interest of justice, this court will, in the alternative, addresses the issues raised by Petitioner in his § 2254 Petition on their merits.

---

[1]    The appellate court issued its decision, September 8, 2009, and issued the mandate on October 1, 2009. The court notes that pursuant to the recent decisions in Gonzalez v. Thaler, 132 S.Ct. 641 (2012), and King v. Hobbs, 2012 WL 246516, at *2 (8th Cir. Jan. 27, 2012), it remains unclear whether the statute commences to run when the appellate court issues its decision or when it issues the mandate. The court has given Petitioner the benefit of the doubt and applied the later date.

# III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably. Id. at 783 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams, 529 U.S. 362, the Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application

for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at

412. The Court further held that the writ of habeas corpus may issue only if the state-court

adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as
> determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of . . . clearly established
> Federal Law, as determined by the Supreme Court of the United
> States." Under the "contrary to" clause, a federal habeas court may
> grant the writ if the state court arrives at a conclusion opposite to that
> reached by this Court on a question of law or if the state court decides
> a case differently than this Court has on a set of materially
> indistinguishable facts. Under the "unreasonable application" clause, a
> federal habeas court may grant the writ if the state court identifies the
> correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes

that the relevant state court decision erroneously or incorrectly applied clearly established federal law.

See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland

v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also

Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary

to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as

set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different

from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003).

It is not necessary for a state-court decision to cite, or even be aware of, applicable federal law, "so

long as neither the reasoning nor the result of the state-court decision contradicts" federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

For a state court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001).  Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11).  The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d  497, 500 (8th Cir. 2001).  The state court's factual determinations  "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001).  For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir.

2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1).").

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. Brown v. Luebbers, 371 F.3d 458 (8th Cir. 2004). The court held in Brown that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said,

case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in Brown that:

> [It] is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.

Id.

Moreover, "when a state appellate court affirms a lower court decision without reasoning," a federal court, pursuant to § 2254 review, "'look[s] through' the silent opinion and appl[ies] AEDPA review to the 'last reasoned decision' of the state courts." Worthington v. Roper, 631 F.3d 487, 497 (8th Cir. 2011) (quoting Winfield v. Roper, 460 F.3d 1026, 1038 (8th Cir. 2006) (other citations omitted). "This is so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." Id. (citing Winfield, 460 F.3d at 1038).

## IV.
## FEDERAL STANDARD FOR IN EFFECTIVENESS OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687

(1984)).  The "performance" prong of <u>Strickland</u> requires a showing that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 690.  To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Id.</u>

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. <u>Id.</u> at 697.  To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." <u>Id.</u> at 697.

Additionally, the court notes that the Court stated in <u>Strickland</u>, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted).  ...

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent

in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

The Supreme Court has emphasized that the standard to be applied by a federal court when reviewing a Strickland claim of a state prisoner pursuant to § 2254 is "doubly deferential judicial review." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). The Court further explained that "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id. (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

As stated above, the Supreme Court held in Strickland that to establish that counsel's performance was constitutionally ineffective, a petitioner must establish both that the attorney's performance was deficient and that this deficiency prejudiced the petitioner's defense. See Strickland, 466 U.S. at 687. The United States Supreme Court further has held that to establish the ineffectiveness of counsel when a guilty plea is entered, a habeas petitioner must show that counsel's representation fell below "an objective standard of reasonableness" and that "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Gumangan v. United States, 254 F.3d 701, 705 (8th Cir. 2001) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "A no-contest guilty plea is valid if 'the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Wilcox v. Hopkins, 249 F.3d 720, 724 (8th Cir. 2001) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). See also Griffith v. Wyrick, 527 F.2d 109, 113 n.6 (8th Cir. 1975) ("If all that was present in this case was an inaccurate prediction of sentence by defendant's counsel ... an otherwise

voluntary plea of guilty would not be vitiated.") (citing <u>Masciola v. United States</u>, 469 F.2d 1057, 1059 (3rd Cir. 1972) (per curiam); <u>Swanson v. United States</u>, 304 F.2d 865, 866 (8th Cir.1962) (per curiam)).

**V.**
**DISCUSSION**

**Ground 1 - Petitioner received ineffective assistance of counsel because counsel allowed Petitioner to plead guilty while suffering from the effects of medication:**

Upon addressing all of Petitioner's claims of ineffective assistance of counsel, the Missouri appellate court held that to establish ineffective assistance of his plea counsel, Petitioner was required to establish both that "counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney," and that "but for counsel's ineffective performance, there is a reasonable probability that [Petitioner] would not have pleaded guilty and would have insisted on going to trial." Resp. Ex. D at 4 (citing <u>Coates v. State</u>, 939 S.W.2d 912, 914 (Mo. 1997) (citing <u>Strickland</u>, 466 U.S. at 687, and <u>Hill</u>, 474 U.S. at 60l).

Specifically, upon addressing the issue of Petitioner's Ground 1, the Missouri appellate court considered that Petitioner contended that he told his counsel, the day of the plea, that he was not feeling well and that he wished to delay the plea; that counsel told him that the State would withdraw its offer if Petitioner did not plead guilty on that date; that counsel failed to inform the court of Petitioner's condition; and that his plea answers were inherently unreliable because his medications had a serious effect on his mental state. The Missouri appellate court further considered that the "ingestion of drugs does not, in and of itself, render a defendant incompetent"; that a guilty plea is invalid "due to the ingestion of drugs only when it impairs the defendant's ability to understand the proceedings and give free assent"; that, prior to accepting Petitioner's guilty plea, the court questioned Petitioner regarding his use of medications; that Petitioner advised the court that he had

taken prescription pain and nerve medications; that Petitioner informed the court that these medications did not affect his ability to understand all of the court's questions; that he answered all of the court's questions truthfully; that his attorney did not advise him to answer untruthfully; and that the plea court found, after observing Petitioner, "that he was not acting under the influence of alcohol or drugs and that his guilty pleas were made voluntarily and intelligently, with a full understanding of the charges against him and the consequence of the pleas." Resp. Ex. D at 5-6. The appellate court also considered that examination of the record revealed no evidence which showed that Petitioner's ability to understand the proceedings was impaired or that his medications affected the voluntariness of his plea. In particular, the appellate court noted that Petitioner testified that he met with his attorney for approximately twenty to thirty hours in more than ten visits and that Petitioner "posed questions [to] and conversed with" the sentencing court. Resp. Ex. D at 6. As such, the Missouri appellate court found that Petitioner did not establish that counsel was ineffective for failing to inform the court of Petitioner's condition or for failing to request that the court reschedule the plea proceedings.

The court has set forth above the standard to be applied to determine, under federal law, whether a defendant has received ineffective assistance of counsel in the guilty plea context. Additionally, under federal law, to be competent to plead guilty a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and have "a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402 (1960). Further, federal law provides:

> Although an incompetent defendant cannot make a valid guilty plea, see Godinez v. Moran, 509 U.S. 389, 396, 113 S.Ct. 2680, 2685, 125 L.Ed.2d 321 (1993), [a defendant's] responses to the court's questions at [his] plea hearing and defense counsel's statements to the judge [may] indicate that [the defendant] was competent to enter a plea of guilty. See Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam) (defendant is competent if he "has sufficient

presentability to consult with his lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceedings against him").

United States v. Grey Cloud, 90 F.3d 322, 323 (8th Cir. 1996).

Further, in United States v. Husten, 19 F.3d 1437 (8th Cir. 1994), the Eighth Circuit rejected a defendant's argument that his guilty plea was involuntary because he was on medication based on the fact that this allegation was inconsistent with his statements at the plea hearing. (citing United States v. Dalman, 994 F.2d 537, 538-39 (8th Cir. 1993) (holding that the defendant failed to show his medication prevented him from entering a knowing plea, and his conduct at the plea hearing was inconsistent with his later claim that he did not understand proceedings)).

Consistent with federal law, upon considering the issue of Petitioner's Ground 1, the Missouri appellate court considered that Petitioner was required to establish both that counsel's performance was unreasonable and that, but for counsel's alleged ineffectiveness, Petitioner would not have plead guilty. See Strickland, 466 U.S. at 688-89; Gumangan, 254 F.3d at 705. The Missouri appellate court also considered the factual findings of the plea and motion court as well as the record of Petitioner's plea hearing reflecting that Petitioner consulted with his lawyer on numerous occasions for many hours and that he demonstrated an understanding of the proceedings. See Dusky, 362 U.S. 402; Dalman, 994 F.2d at 538-39; Grey Cloud, 90 F.3d at 323. Only after doing so did the Missouri appellate court find that Petitioner was not denied ineffective assistance of counsel for the reason alleged in Ground 1. As such, this court finds that the decision of the Missouri appellate court regarding the issue of Ground 1 is not contrary to federal law and that it is a reasonable application of federal law. See Strickland, 466 U.S. at 687-88; Dusky, 362 U.S. 402; Gumangan, 254 F.3d at 705; Husten, 19 F.3d 1437. Additionally, the court finds that upon considering the issue of Ground 1, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The

court finds, therefore, that Petitioner's Ground 1 is without merit and that habeas relief on its basis should be denied.

**Ground 2 - Petitioner received ineffective assistance of counsel because counsel failed to accurately explain to him the State's recommendation regarding sentencing:**

As stated above, prior to considering the merits of Ground 2, the Missouri appellate court considered the federal standard applicable to claims of ineffective assistance of plea counsel. The Missouri appellate court further considered that Petitioner claimed that his pre-plea and sentencing counsel, as well as the prosecuting attorney, were confused about the terms of the plea; that he relied on the representation of his plea counsel that there would be a four-year cap on his sentence and that he would be placed on probation; and that, but for counsel's misrepresentation, Petitioner would not have plead guilty. The Missouri appellate court further considered that a defendant's mistaken belief regarding sentencing "may affect his ability to knowingly enter a guilty plea if the mistake is (1) reasonable, and (2) based on positive representations upon which the defendant is entitled to rely," but that a "defendant's guilty plea is voluntary even though his attorney gave him erroneous advice, if the plea court's questioning 'thoroughly disabused him of any preconceived notions regarding the consequences of a guilty plea.'" Resp. Ex. D at 7-8 (citing <u>Johnson v. State</u>, 921 S.W.2d 48, 50 (Mo. Ct. App. 1996) and (quoting <u>Allen v. State</u>, 233 S.W.3d 779, 784 (Mo. Ct. App. 2007) (internal citation omitted).

The Missouri appellate court found that, although there was some "initial confusion among the attorneys and the court as to the State's sentencing recommendation, the parties quickly resolved the issue." Resp. Ex. D at 8. In particular, the Missouri appellate court considered that the plea court asked Petitioner if he understood that the court was going to order a Sentencing Assessment report; that, if the report recommended that the court grant Petitioner probation, the court would sentence Petitioner to eight years in the DOC, but that the court would suspend Petitioner's sentence and place

him on five years supervised probation; and, if the report was unfavorable and the court denied him probation, that the court would sentence Petitioner to four years. The appellate court further considered that the plea court repeatedly asked Petitioner if he understood what the court had told him and that Petitioner responded repeatedly that he understood all of these statements. Resp. Ex. D at 8-9. The Missouri appellate court found, based on the record, that Petitioner had no reasonable basis to believe that his prison sentence would be capped at four years. The Missouri appellate court concluded that the questions posed by the plea court to Petitioner and his responses "'thoroughly disabused him of any preconceived notions' regarding the consequences of his pleading guilty" and that the court's questions and Petitioner's responses refuted Petitioner's claim of ineffective assistance of counsel as alleged in Ground 2. Resp. Ex. D at 9.

The court has set forth, above, the federal standard applicable to claims of ineffective assistance of counsel in the guilty plea context. Additionally, under federal law a guilty "plea is not rendered involuntary based merely on [a defendant's] alleged mistaken belief" regarding the length of his sentence." United States v. Lugo-Sanchez, 162 Fed. Appx. 686, 687 n.1 (8th Cir. 2006) (per curiam) (per curiam) (citing United States v. Granados, 168 F.3d 343, 345 (8th Cir.1999) (defendant's reliance on attorney's mistaken impression about length of sentence insufficient to render plea involuntary as long as court informed defendant of maximum possible sentence).

After considering the standard applicable to claims of ineffective assistance of plea counsel, the Missouri appellate court considered that the record reflected that the plea court explained the terms of the sentence to be imposed and that Petitioner understood these terms. Moreover, the record reflects that Petitioner informed the court that he understood that he could be sentenced to more than four years. As such, the court finds that the decision of the Missouri appellate court based on the issue of Petitioner's Ground 2 is not contrary to federal law and that it is a reasonable

application of federal law. See Strickland, 466 U.S. at 687-88; Gumangan, 254 F.3d at 705; Lugo-Sanchez, 162 Fed. Appx. at 687 n.1. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 2 is without merit and that habeas relief on its basis should be denied.

**Ground 3 - Petitioner received ineffective assistance of counsel because counsel failed to fully investigate his case:**

Upon considering the issue of Petitioner's Ground 3, the Missouri appellate court considered that Petitioner alleged that he told counsel that the bank account from which the checks were issued was jointly held with his mother and that his mother had closed the account without his knowledge; that he told counsel that he reasonably believed that the account was open and contained sufficient funds to cover the checks he wrote; that his mother was willing to testify that she had closed the accounts without Petitioner's knowledge; and that counsel advised Petitioner to plead guilty regardless of his possible defense. Resp. Ex. D at 10. The Missouri appellate court further considered that to establish ineffective assistance of counsel based on a failure to investigate, Petitioner was required to allege the specific information his counsel failed to discover and that "the information would have aided [Petitioner's] defense or improved his position at trial." Resp. Ex. D at 10 (citing Thurman v. State, 263 S.W.3d 744, 754 (Mo. Ct. App. 2008)). The Missouri appellate court considered Petitioner's testimony regarding the amount of time he spent conferring with his attorney and that Petitioner testified that his attorney had done everything Petitioner had asked him to do; that counsel explained to Petitioner the defenses available to him; and that he was satisfied with counsel's advice. The Missouri appellate court concluded that "[i]n light of the fact that the State dismissed 9 out of 11 counts against [Petitioner] in exchange for [Petitioner's] pleading guilty, [Petitioner] ha[d] failed to set forth facts demonstrating that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial." Resp. Ex. D at 11.

The court has set forth, above, the standard applicable to claims of ineffective assistance of plea counsel. Additionally, under federal law, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland at 690-691.

The Supreme Court further held, in Wiggins v. Smith, 539 U.S. 510, 533 (2003), that:

> Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does Strickland require defense counsel to present mitigating evidence at sentencing in every case. Both conclusions would interfere with the "constitutionally protected independence of counsel" at the heart of Strickland, 466 U.S., at 689, 104 S.Ct. 2052. We base our conclusion on the much more limited principle that "strategic choices made after less than complete investigation are reasonable" only to the extent that "reasonable professional judgments support the limitations on investigation." Id., at 690-691, 104 S.Ct. 2052. A decision not to investigate thus "must be directly assessed for reasonableness in all the circumstances." Id., at 691, 104 S.Ct. 2052.

As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 3 is not contrary to federal law and that it is a reasonable application of federal law. See Wiggins, 539 U.S. at 533; Strickland, 466 U.S. at 690-91; Gumangan, 254 F.3d at 705. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 3 is without merit and that habeas relief on its basis should be denied.

## VI.
## CONCLUSION

The court finds that Petitioner's § 2254 Petitioner is untimely. Alternatively, the court finds that Petitioner's Grounds 1-3 are without merit. As such, the court finds that Petitioner's § 2254 Petition should be denied in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED**; Doc. 1

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability be **DENIED**;

The parties are advised that Petitioner has fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
Dated this 18th day of May, 2012.          UNITED STATES MAGISTRATE JUDGE